Alanna Zabel
1235 4th St
Santa Monica, CA 90401
alanna@aziam.com



FILED

2024 DEC 13 PM 1:35

CLERK U.S. DISTRICT COURT
CENTRAL DIST OF CALIF.
LOS ANGELES
BY.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

2:24-cv-10764-FLA (SSCx)

| | |
|---|---|
| **ALANNA ZABEL,** ) | **COMPLAINT FOR DAMAGES & PUNITIVE ACTION** |
| ) | |
| **PLAINTIFF** ) | • (1) COPYRIGHT INFRINGEMENT |
| ) | • (2) DESNY CLAIM |
| **vs** ) | • (3) UNFAIR BUSINESS PRACTICES |
| ) | • (4) UNJUST ENRICHMENT |
| **WENDY (LAUREN) SANCHEZ,** ) | |
| ) | |
| **DEFENDANT** ) | **DEMAND FOR JURY TRIAL** |
| ) | |

# THE PARTIES

1. PLAINTIFF Alanna Zabel hereby alleges the following, on information and belief, against Wendy Sanchez, aka Lauren Sanchez, DEFENDANT. PLAINTIFF complains and alleges as follows on the basis of personal knowledge, direct eyewitnesses, correspondence, and/or information and belief.

2. Plaintiff has worked as a private yoga instructor, internationally esteemed wellness personality, author, and business owner for over twenty-five years, enjoying a stellar career working with a wide variety of A-list actors, world famous TV personalities, producers, politicians, and musicians. Plaintiff is the founder of AZ I AM Yoga and AZ I AM Kidz. Plaintiff has authored and published fourteen children's books, all with inspirational, wellness themes, her first book was published in 2001. Plaintiff is also the inventor and creator of The World's First Yoga Doll® collections, manufacturing the first moveable fashion doll in to the toy and doll market in 2013. Plaintiff worked as a private yoga instructor to Defendant from 2007-2010.

3. Defendant is an actress, news anchor, TV host, and founder of Black Ops Aviation. She is currently dating Jeff Bezos, the founder of Amazon; founder of Blue Origin; and owner of Washington Post.

## JURISDICTION AND VENUE

4. This is an action arising under the Copyright Act of 1976, 17 U.S.C. § 101 et seq.; the Desny v. Wilder doctrine, which pertains to implied-in-fact contracts regarding the use of ideas in entertainment projects; and related claims of Unfair Business Practices and Unjust Enrichment.

5. This Court has subject matter jurisdiction over the federal copyright infringement claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a).

6. This Court has supplemental jurisdiction over the Desny claim pursuant to 28 U.S.C. § 1367(a).

7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 1400(a).

## FACTUAL ALLEGATIONS – GENERAL

### The Copyrighted Work

8. Plaintiff is the creator and copyright owner of *Dharma Kitty Goes to Mars* (the "Copyrighted Work"), which includes but is not limited to literary works, scripts, and creative ideas for a children's book, plush toys, dolls, and clothing.

9. Plaintiff published the Copyrighted Work late 2022. The Copyrighted Work became available for purchase on Amazon.com March 23, 2023. Plaintiff registered the Copyrighted Work with the United States Copyright

Office on December 5, 2024, under service request 1-14534916601.

## Defendant's Access to the Copyrighted Work

10. Plaintiff and Defendant engaged in oral and written discussions spanning sixteen years, regarding a potential partnership to create a fitness program together, as well as for Defendant to partner with Plaintiff and her company, AZ I AM, Inc., which included the writing, illustrating and publishing of children's books, manufacturing of dolls, toys and apparel.

11. Some of the above mentioned discussions between Plaintiff and Defendant involved and included Defendant's manager, Michael Sanchez, as requested by Defendant.

12. October, 2009, Defendant signed a Non-Disclosure Agreement with Plaintiff, which does not specify a time limitation.

13. In 2022, Plaintiff reached out directly to Defendant via email, text, and Instagram, sharing a specific book concept with Defendant, about a cat who flies to Mars, re-opening prior discussions (from 2007-2010), and trusting her with the intellectual property and concept.

14. Plaintiff provided the concept and project to Defendant for the purpose of potential collaboration and with the express or implied understanding that Plaintiff would be compensated if the work was used.

15. Plaintiff's motive to reach out to Defendant was in believing that Defendant had matured in character since Plaintiff had resigned from

working for Defendant in 2010 due to Defendant's continual and
outrageous acts of jealousy towards Plaintiff. Those newfound beliefs were
based on positive public media coverage illustrating Defendant's new
relationship with Mr. Bezos at that time.

16. It is well known that Mr. Bezos is globally recognized as leading space
endeavors to the planet Mars. Plaintiff was led to believe that Defendant
had indeed shifted her focus and concerns towards relevant social issues
when she became the Vice Chair of Bezos Earth Fund.

17. Plaintiff's email to Defendant revisited the idea of their previously
discussed partnership, including promoting Plaintiff's forthcoming
children's book, the Copyrighted Work. The proposal also suggested
donating proceeds from the book's sales to the Bezos Earth Fund and the
Bezos Academy. Additionally, it is publicly known that Plaintiff's books
are associated with charitable contributions, aligning with themes central to
each work.

18. In 2022, Plaintiff emailed Mr. Bezos to announce her children's book,
*Dharma Kitty Goes to Mars*, and share details about her toy and doll
company. Mr. Bezos' personal assistant confirmed receipt of the email,
stating that 'Mr. Bezos received her email.'

19. Plaintiff proceeded with the Copyrighted Work project, publishing
*Dharma Kitty Goes to Mars* late 2022, becoming available for purchase on
Amazon.com March 23, 2023, under circumstances that clearly indicated

Plaintiff's intent to maintain her rights in the copyrighted work.

## Defendant's Infringement

20. Late January of 2023 Defendant publicly announced that she planned to write a children's book about a fly who flies to space, titled *A Fly Who Flew to Space* ("the Infringing Work").

21. Defendant subsequently used Plaintiff's book concept without Plaintiff's consent or authorization. This was executed with the intent to undermine Plaintiff, as well as in retaliation against Plaintiff, who resigned working for Defendant.

22. Defendant's actions stemmed from her relationship with Plaintiff, who was her private yoga instructor and friend, which Defendant exploited to gain an advantage in her creative and professional business.

23. In March, 2024, Mr. Bezos posted a photo of Defendant's upcoming children's book cover, which includes a rocket logo graphic on the chest of the main character, the fly. The main character in Plaintiff's Copyrighted Work also adorns a rocket logo on her apparel. Plaintiff's book has clearly been an unlawful influence for Defendant's book.

24. On March 25, 2024, Plaintiff issued a cease and desist letter to Defendant and Simon & Schuster.

25. On March 26, 2024, Simon & Schuster responded that they were not the publisher of the Infringing Work. They confirmed that they would

forward the cease and desist to the publisher of the Infringing Work, The Collective Book Studio.

26. On April 4, 2024 Plaintiff issued a second cease and desist sent to Defendant via her lawyer, as well as directly to The Collective Book Studio.

27. In September 2024, the timeframe when Defendant had previously announced the publication of the Infringing Work, Defendant launched an international public relations campaign and a national book tour. As part of this campaign, Defendant noticeably shifted the focus of her publicity efforts from space travel (the Infringing Concept) to dyslexia, despite the fact that the Infringing Work contains no mention of dyslexia. Despite this shift in the public narrative away from the actual content of the Infringing Work, Defendant did not alter the core concept of the book—a fly who travels to space—prior to its publication.

28. Without authorization, Defendant reproduced, distributed, and/or publicly displayed a work substantially similar to the Copyrighted Work titled *A Fly Who Flew To Space* (the "Infringing Work").

29. Defendant proceeded to publish the Infringing Work on September 15, 2024, defying the cease and desist letters from Plaintiff.

30. The Infringing Work appropriates unique and protectable elements of the Copyrighted Work, including but not limited to: a) an animal that accidentally flies to space, b) a rocket logo branded on the clothing of the

main character, c) aspiration of the main character to become an astronaut,
d) a classroom scene including a chalkboard and teacher, e) a mission
controls scene including a team of ground controllers, f) a close-up on a
keyboard console page, g) the main character "accidentally" becoming
locked inside a space vehicle, h) the main character calling out the word,
"help" in response to being locked inside the space vehicle, i) the main
character pressing their hand against the glass of the door in response to
being locked inside the space vehicle, j) the words "loud noise" and
"flashes of lights" in response to being locked inside, k) a page showing the
character looking out the window towards the earth below, l) a page
showing the panned out view of space, m) a scene where the parents of the
main character are concerned about their whereabouts, n) a scene where the
main character is reunited with their families, o) a scene where the main
characters receive a medal of recognition, p) the use of the theme "I AM
Focused," the latter which is signature to all AZ I AM Kidz children's
books.

31. The Infringing Work contains well over 60% of similar content and
story as the Copyrighted Work that Plaintiff had shared with Defendant,
and which Plaintiff published in March of 2023. Defendant merely
swapped out Plaintiff's characters, Pratya and Dharma Kitty, essentially
swapping out a "cat," with a "fly". Defendant's publication mirrored
Plaintiff's original idea and creative expression, confirming the
unauthorized use and infringement of Plaintiff's intellectual property.

32. Defendant's conduct constitutes willful infringement of Plaintiff's exclusive rights under 17 U.S.C. § 106.

33. Plaintiff had communicated the book concept to Defendant with the expectation that it would be treated as confidential and not used for any unauthorized purpose. Defendant's actions constitute a breach of this expectation.

34. Attached hereto as Exhibit A is a side-by-side comparison of the Copyrighted Work and the Infringing Work, demonstrating the substantial similarities between the two.

## Desny Claim

35. Plaintiff's disclosure of the Infringing Concept to Defendant occurred under circumstances creating an implied-in-fact contract.

36. Plaintiff provided the Infringing Concept with the expectation that if it were used, Plaintiff would receive compensation, and Defendant understood or should have understood these conditions.

37. From 2008 to 2010, Plaintiff worked as a private yoga instructor for Defendant. During this time, Defendant signed a non-disclosure agreement (NDA) in connection with discussions about collaborating on several creative projects, including children's books.

38. During these discussions in 2009, Defendant disclosed an idea about writing a book involving a fly, in which Defendant's story had absolutely

LEGAL COMPLAINT ZABEL VS SANCHEZ

no relation to space exploration or travel, or any other concepts present in the Infringing Work.

39. Defendant's use of the Copyrighted Work without compensating Plaintiff constitutes a breach of the implied-in-fact contract under the Desny v. Wilder doctrine.

## FIRST CAUSE OF ACTION

*Copyright Infringement (17 U.S.C. § 501)*
(Against Defendant)

40. Plaintiff realleges and incorporates by reference all of the allegations contained in the preceding paragraphs as if set forth fully herein.

41. Defendant's actions constitute copyright infringement in violation of 17 U.S.C. § 501.

42. As a result of Defendant's infringement, Plaintiff has suffered damages, including but not limited to lost revenue, emotional suffering, and harm to reputation.

43. Plaintiff is entitled to recover actual damages and Defendant's profits attributable to the infringement under 17 U.S.C. § 504(b), or statutory damages under 17 U.S.C. § 504(c).

## SECOND CAUSE OF ACTION

*Desny Claim (Theft of Ideas)*
(Against Defendant)

44. Plaintiff realleges and incorporates by reference all of the allegations contained in the preceding paragraphs as if set forth fully herein.

45. Defendant's use of the Copyrighted Work without compensating Plaintiff constitutes a breach of an implied-in-fact contract, which is governed by California law and supported by the Desny v. Wilder doctrine.

46. From 2008 to 2010, Plaintiff worked as a private yoga instructor for Defendant. During this time, Defendant signed a non-disclosure agreement (NDA) in connection with discussions about collaborating on several creative projects, including children's books.

47. In these discussions, Plaintiff shared original creative ideas, including children's book concepts, and Defendant shared an idea for a book involving a fly on the outside of a helicopter, which bore no relation to space exploration or the themes present in the Infringing Work.

48. Defendant's use of the Copyrighted Work without compensating Plaintiff constitutes a breach of this implied-in-fact contract, as established under California law and consistent with the principles outlined in Desny v. Wilder.

49. Plaintiff's children's book concept at the basis of this complaint has been public since 2013, further demonstrating that Defendant had knowledge of the concept and its value, supporting the implied-in-fact contract claim.

50. This Court has supplemental jurisdiction over this claim under 28 U.S.C. § 1367(a), as it shares a common nucleus of operative facts with the federal copyright infringement claims.

51. The similarity between the content of Defendant's published book and Plaintiff's original concept is substantial and evident. Comparative analysis of the works reveals that Defendant's book includes key elements, themes, and narrative structures that are directly derived from Plaintiff's confidential concept.

52. Plaintiff is entitled to recover damages resulting from Defendant's breach.

### THIRD CAUSE OF ACTION

*Unfair Business Practices*
(Against Defendant)

53. Plaintiff realleges and incorporates by reference all of the allegations contained in the preceding paragraphs as if set forth fully herein.

54. Defendant has engaged in unfair business practices by using her public influence to unfairly leverage publicity, sales, and prestige for the Infringing Work.

55. Defendant organized a national press tour touting herself as the original author of the Copyrighted Work, thereby misleading the public and depriving Plaintiff of rightful credit and opportunities.

56. Defendant's conduct has caused Plaintiff economic harm, reputational

damage, and lost business opportunities.

57. Defendant's actions were not only unauthorized, but they were so egregious that it was foreseeable Plaintiff would suffer as a result of such actions. She executed these infringements with a clear disregard and understanding of their harmful impact.

58. Plaintiff is entitled to compensatory damages, restitution, and injunctive relief to prevent further unfair business practices by Defendant.

## FOURTH CAUSE OF ACTION

*Unjust Enrichment*
(Against Defendant)

59. Plaintiff realleges and incorporates by reference all of the allegations contained in the preceding paragraphs as if set forth fully herein.

60. Defendant has unfairly and unlawfully benefited from her unauthorized use of the Copyrighted Work and the associated publicity, sales, and prestige derived therefrom.

61. Defendant's actions have unjustly enriched her at the expense of Plaintiff, who has not received compensation or recognition for her original contributions.

62. Equity and good conscience require Defendant to disgorge any and all benefits and profits obtained through her unlawful actions and compensate

Plaintiff for the value of the benefits unjustly retained.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant as follows:

a) For a declaration that Defendant's actions constitute copyright infringement under 17 U.S.C. § 501;

b) For an award of actual damages and Defendant's profits attributable to the infringement, or statutory damages, as permitted by law;

c) Punitive damages to deter future misconduct in a sufficient amount to punish her for her misconduct;

d) For declaratory relief whereby Defendant is ordered to issue corrective statements as to the origin of her children's book;

e) For pre-judgment and post-judgment interest, at the maximum legal rate;

f) For an award of attorneys' fees and costs pursuant to 17 U.S.C. § 505 and other applicable laws;

g) For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff Alanna Zabel hereby demands a trial by jury in the above action.

Dated: December 13, 2024                          Respectfully submitted,

_____

Alanna Zabel,
*Plaintiff, pro se*

# EXHIBIT A

FLY TITLE: 1) CHARACTER, 2) "GOES TO",
3) SPACE DESTINATION



DK - TITLE: 1) CHARACTER,
2) GOES TO, 3) SPACE



TITLE "SIMILARITY": 1) CHARACTER, 2) GOES TO, 3) SPACE

## DK - ASTRONAUT ASPIRATION



## FLY - ASTRONAUT ASPIRATION

THE FLY WHO FLEW TO SPACE



... on becoming an ASTRONAUT.

FLY - ASTRONAUT ASPIRATION

ASPIRATION TO BE AN ASTRONAUT "SIMILARITY"





CLASSROOM SCENE "SIMILARITY"

# FLY - KEYPAD / CONSOLE

THE FLY WHO FLEW TO SPACE



# DK - KEYPAD / CONSOLE



KEYPAD / CONSOLE "SIMILARITY"

# FLY - MISSION CONTROL / GROUND TEAM

THE FLY WHO FLEW TO SPACE



FLY - MISSION CONTROL

I love exploring 'Mission Control,' which is in charge of every flight.

# DK - MISSION CONTROL / GROUND TEAM

It was too late! Dharma Kitty's yawn triggered the space shuttle for take-off. All doors secured shut, alarms sounded and red lights flashed everywhere.

MISSION CONTROL / GROUND TEAM "SIMILARITY"





LOCKED INSIDE A SPACE VEHICLE "SIMILARITY"





# FLY - LOOKING OUT THE SPACE VEHICLE WINDOW

THE FLY WHO FLEW TO SPACE



# DK - LOOKING OUT WINDOW OF SPACE VEHICLE



LOOKING OUT THE SPACE VEHICLE WINDOW "SIMILARITY"



# FLY - PAN OUT SPACE

THE FLY WHO FLEW TO SPACE

Then all of a sudden, everything
turns black. We are in SPACE.

It seems to go on forever.
And Earth looks so small.

# DK - PAN OUT SPACE

Outer space is totally silent because sound waves
have nothing to bounce off to create sound.

Let's sit completely still, in total silence for 20 seconds.
Ready? No movement, no sound ... Begin.

PAN OUT OF DARK SPACE PAGE "SIMILARITY"





WORRIED FAMILY "SIMILARITY"

## FLY - REUNITED WITH FAMILY

THE FLY WHO FLEW TO SPACE



## DK - REUNITED WITH FAMILY



REUNITED WITH FAMILY "SIMILARITY"





AWARD GIVEN "SIMILARITY"



FLY - "I AM FOCUSED"

THE FLY WHO FLEW TO SPACE



DK - I AM FOCUSED

DHARMA KITTY GOES TO MARS!



*"I AM FOCUSED"/"SIMILARITY"*

**FLY - ROCKET LOGO ON CLOTHING**



**DK - ROCKET LOGO ON CLOTHING 2**



**DK - ROCKET LOGO ON CLOTHING**



**ROCKET LOGO ON CLOTHING "SIMILARITY"**

# EXHIBIT B

## DECLARATION OF MICHAEL SANCHEZ

I, Michael Sanchez, declare as follows:

1.      I am the brother and former manager of Lauren Sanchez. I have personal knowledge of the facts contained in this Declaration, and if called upon to testify, I could and would competently testify thereto.

2.      Lauren Sanchez is a pathological liar whose long list of malicious prior lies caused unthinkable damage, pain and suffering to a wide variety of victims. As just a few examples, Lauren's…

     a)   …blatantly false lie about an alleged theft of money pushed her own mother to the brink of suicide.

     b)   …lies about her checkered past, including a prior extramarital love affair with mega billionaire Dan Friedkin, and a prior extramarital sexual affair with her employee Ryan Antoon, convinced Jeff Bezos, the richest man in the world, to leave his wife of twenty-five years.

     c)   …monstrously false and extortionate lie alleging incestuous sexual abuse forced me to report her and her corrupt attorney to the FBI.

     d)   …lies and puppet master control over her fiancé convinced the fame-obsessed mega billionaire to commit Perjury.

3.      Lauren always struggled with grammar and writing. Throughout her lifetime I've written, edited, and/or assisted my sister with her homework, bios, scripts, speeches, appearances, texts, emails, social media posts, etc. As just one example, here is an excerpt from the prep document I wrote for Lauren's return to *The View* in 2014, and the public praise it generated from Rosie O'Donnell:

**LAST WEEK**
*Thanks for your tweet last week – it made my day.*

Lauren (after Justin Bieber versus Orlando Bloom **lead** story):
"With all the wars raging around the world, this is the battle we're talking about?"

Whoopi
"We've known y'all for a long time. We know you wanna hear about Bieber vs. Orlando."

IF SOMEONE ELSE SAYS THIS FIRST, BE READY WITH:

**I wasn't saying we shouldn't cover entertainment & gossip.**
**I was just making the point that it shouldn't be our lead story when wars are raging around the world.**

Lauren to Rosie: Of course, I know the audience loves celeb gossip and brawls. That's a big part of *Hot Topics*. But it shouldn't be the lead story when wars are raging around the world; we're facing one of the worst Ebola threats ever and planes are falling from the skies.

*The View* has slipped off the path which made it such a success. Initially, it was *a forum for women to express and discuss different opinions and experiences.* Now it's a whole lot of yelling and "gotcha" moments.

I'm looking forward to healthy debates; sometimes respectfully heated, sometimes just cool discussions. I'll know things are back on the right track when one of us actually changes her mind DURING the debate. That's real life. Real women, discussing complicated issues, sharing experiences and perspectives - making a real difference without always fighting to be "right" (whatever the hell right means)!

Be prepared with examples which always get the panel fired up and divided: Middle East / NRA / Spanking / Gay Marriage ---- and your take on how you would've like them to play out if you were on the panel.

NOTE: You should never apologize for all you have, but, only if someone brings it up, be aware, *The View* audience will not understand Beverly Hills mansions, beach houses, private jets, too intimate display of celebrity friends, etc. It will likely never come up, but on the off chance it does:

*I was born in Albuquerque. We lived in a small three bedroom house on Manzano Street. That's where I come from. I've worked hard my entire life. I'm proud of my roots. I'm proud of my career. But I'm most proud of my family.*



Rosie @Rosie · Jul 30
Lauren Sanchez - bravo - "with all the fighting in the world - in gaza and this is the fight we r talking about"

4.    I've known Alanna Zabel for approximately fifteen years. She is of the highest character, the complete opposite of Lauren Sanchez. Over the years, Alanna has shared many great ideas and potential projects with Lauren and me.

5.    Based on my knowledge of Lauren's sociopathic character and long history of lies about her background, abilities, accomplishments, etc., I sincerely believe Lauren stole many of Alanna's ideas and included them in her soon-to-be-published children's book, *"The Fly Who Flew To Space."*

I declare under penalty of Perjury that the foregoing is true and correct. Executed this 17th day of March, 2024 at West Hollywood, California.

Michael Sanchez